```
          THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                                NORTHERN DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| JAMES GARNER, ) | Case No. 1:12CV00107 DS |
| Plaintiff, ) | |
| vs. ) | |
| ) | MEMORANDUM DECISION |
| ) | AND ORDER ADDRESSING |
| SEDGWICK CLAIMS MANAGEMENT | MOTION TO REMAND |
| SERVICES, INC, ET AL., ) | |
| Defendants. ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.   INTRODUCTION

Mr. Garner was employed by Alliant Techsystems, Inc. ("ATK") in its Clearfield, Utah office. After he was injured and stopped working, Mr. Garner received short-term disability benefits from ATK until a determination that he was no longer qualified to receive benefits because his impairment no longer prevented him from performing his job. Mr. Garner filed an administrative appeal with ATK's Short-Term Disability Plan (the "Plan") which was denied. This litigation followed.

Mr. Garner filed his lawsuit in state court. Defendants removed the matter to this court on the basis that the claims at issue are preempted by federal law, specifically the Employee Retirement Income Security Act of 1974 ("ERISA"). Mr. Garner has filed a motion to remand (Doc. #11) asserting that the Plan is

exempted from ERISA preemption. For the reasons that follow, the motion to remand is granted.

## II DISCUSSION

ERISA regulates "employee welfare benefit plans," which include plans that provide employees "benefits in the event of sickness." 29 U.S.C. § 1002(1). ERISA displaces or preempts all state laws within its sphere. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). However, Department of Labor regulations exclude certain payroll practices from the application of ERISA.

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include ... (2)Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons....

20 C.F.R. § 2510.3-1(b).

It is undisputed that the Plan provides for basic disability benefits covering 80% of an employee's pre-disability income, provided to the employee without charge and paid from ATK's general assets. "Buy-up" or self-insurance coverage, providing the remaining 20% of an employee's pre-disability income, also is available to an employee as an option with the employee paying the full cost of the insurance coverage through payroll deductions. Mr. Garner purchased the additional disability insurance coverage.

The dispute between the parties relates to how the benefits are funded. Mr. Garner's position is that because the Plan provides compensation for an employee unable to perform his or her duties due to physical or mental illness, and because the compensation is paid from the general assets of ATK, it is a payroll practice and excluded from ERISA coverage. Defendants, on the other hand, assert that "a payroll practice exists only where all benefits are paid out of an employer's general assets and only from the general assets." Mem. Opp'n at 7.[1]

The question presented is whether the Plan is a payroll practice exempt from ERISA, or whether the Plan is an ERISA regulated plan because Mr. Garner purchased, at his or her option and expense through payroll deductions, insurance equaling the

---

[1] See  *McMahon v. Digital Equip Corp.*, 162 F.3d 28, 37 (1st Cir. 1998) ("where, as here, an employer partially funds a plan from sources outside of its general assets files documents with the Department of Labor and the IRS consistent with the plan's ERISA status, and informs employees that the plan is subject to ERISA regulation, we find that the plan is an ERISA plan and not a payroll practice").

remaining 20% of his pre-disability income. Defendants have the burden of proof.[2]

Ample authority supports the conclusion that a plan paying 80% of earnings entirely from the employer's general assets to employees unable to work due to physical or mental disability fits within 29 C.F.R. § 2510.3-1(b)(2) as a payroll practice exempt from ERISA. *See*, *e.g.*, *Butler v. Bank of Am.,* 2008 WL 1848426 (N.D. Tex. April 21, 2008)(and authority cited therein)(disability payments out of the general assets of employer equal to 75% of employee's normal compensation for period of time when employee cannot work due to medical reasons is a payroll practice exempt from ERISA).

The Department of Labor, the administrative agency with expertise over the enforcement of ERISA matters, takes the position that to the extent that short term disability payments were made

---

[2]The party invoking the court's removal jurisdiction has the burden to establish the court's jurisdiction. *Laughlin* v. Kmart Corp., 50 F. 3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863 (1995). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against federal jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The court must resolve any doubts in favor of remand. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). The court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). *See also Havey v. Tenneco,* 2000 WL 198445, *8 (N.D. Ill. Feb. 11, 2000)(citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 n.2. (9th Cir. 1998)("[t]he burden is on the party claiming that an ERISA plan exists to show that the benefit plan is an ERISA plan").

from the general assets of the employer and such payments "either equal, or represent a significant portion of, an employee's normal compensation," then the Department of Labor will conclude the plan constitutes an employer "payroll practice" within the meaning of regulation section 2510.3-1(b)(2). Dept. of Labor Advisory Op. No. 93-27A, 1993 WL 421012, *6  (Oct. 12, 1993).[3]

Defendant's, who as noted have the burden of proof, have offered no conclusive authority for their position.[4]  The Court notes with concern that under ATK's position, if Mr. Garner had received only  the standard company provided benefits equaling 80%

---

[3] See Bassiri v. Xerox Corp., 463 F3d 927, 931 (9th Cir.20060)(citing Auer v. Robbins, 519 U.S. 453, 461 (1997))("where an agency interprets its own regulation even if through an informal process, its interpretation of an ambiguous regulation is controlling under Auer unless 'plainly erroneous or inconsistent with the regulation'").

[4] Defendants' reliance on McMahon, see note 1, is misplaced. That case is offered  for the proposition that if the employer funds a plan from sources other than its general assets, it is not a payroll practice.  Here it is not the employer paying for disability benefits from sources other than its general assets. It is undisputed that benefits equaling 80% of an employees pre-disability compensation comes from ATK's general assets and only from those assets.  However, the remaining 20% of pre-disability income insurance Mr. Garner received was purchased at his direction and at his expense.  It is self-insurance.  It was not funded by ATK from sources other than its general assets.
Likewise, Defendants reliance on Marshall v. Whirlpool Corp, No. 07-CV-534-JHP, 2009 WL 1939922 (N.D. Okla. July 6, 2009) and Dept. of Labor Advisory Op. No. 93-02A, 1993 WL 68525 (Jan. 12, 1993), is also misplaced. Those authorities simply support the proposition that where the facts or representations are that disability benefits are paid entirely from the general assets of the employer, the plan is a payroll practice.

of his pre-disability income from the general assets of ATK, rather than opting to "buy-up" at his own expense insurance coverage paying him the remaining 20% of his pre-disability income, there would be no dispute that the Plan would be a payroll practice exempt from ERISA.  Defendants' position that because Mr. Garner exercised his option to "buy-up" at his expense insurance providing him the additional 20% of his pre-disability income, does not without persuasive authority, in the Court's view, change the essential character of the Plan such that it can  not be considered a payroll practice.   Were the Court to decide otherwise, the Plan would be subject to ERISA regulation if an employee purchased the optional 20% insurance coverage, but exempt from ERISA if the employee makes no "buy-up".  Such a situation would be untenable for the Plan and has no rational relationship to why ERISA was enacted. *See Massachusetts v. Morash*, 490 U.S. 107, 112-113 (1989) (ERISA was passed by Congress with the intent of safeguarding employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits).  Such does not appear to be a concern here.

Defendants' also contend that the Plan should not be treated as a payroll practice because benefits "do not cease when an employee ends employment with ATK", Opp'n at 9, and, therefore, the program is not analogous to ordinary wages or salary.

Defendants' position is rejected.[5] Short term disability payments to replace lost wages clearly is analogous to ordinary salary or wages.

Finally, ATK urges that the Plan is subject to ERISA regulation because "it is part of a larger, ERISA-regulated benefits program" and because "it is represented to employees and the government as being subject to ERISA". Mem. Opp'n at 10. That position is also rejected. As ATK acknowledges, the characterization of a plan, given it by an employer is but one of many considerations in determining ERISA coverage and is not dispositive.

> The mere labeling or description of a plan by an employer is not determinative as to whether a plan is governed by ERISA. *Langley [v. DiamlerChrysler Corp*.], 502 F.3d at 481 [6th Cir. 2007]; *Stern v. Int'l Business Machines Corp*., 326 F.3d 1367, 1374 (11th Cir. 2003). If an employer's labeling of a plan was held to be dispositive on the issue, employers would be permitted to "engage in regulation shopping" and could "convert an otherwise exempt benefit into one covered under ERISA". *Langley*, 502 F.3d at 481. Rather than giving employers this unchecked power to determine the applicability of ERISA by simply attaching a label, courts look to how the plans in question are funded. *See Id.; Stern*, 326 F.3d at 1373-4; *McMahon [v. Digital Equipment Corp*.], 162 F. 3d. at 38 [1st Cir. 1998].

---

[5]ATK's statement is not entirely accurate. As quoted by it, the Summary Plan Description provides: "If your employment with ATK ends involuntarily while you are receiving STD benefits, your STD benefits will continue as long as you continue to be Disabled and you have not exhausted your Maximum Benefits Period." Mem. Opp'n at 9. What ATK does not state is that STD benefits end as of the date an employee voluntarily terminates employment. *See* Mem. Opp'n, Ex. C at 12.

*Marshall v. Whirlpool Corp.*, 2009 WL 1939922 at *5.

### III.  CONCLUSION

Because Defendants have failed in their burden to establish the court's jurisdiction, and more specifically to establish that ATK's Plan is an ERISA regulated plan, rather than a payroll practice exempt from ERISA, the Court concludes that Mr. Garner's Motion to Remand this matter to the state court from which it was removed (Doc. #11), must be granted.

IT IS SO ORDERED.

DATED this 10th day of September, 2012.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT